IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs At Knoxville December 13, 2011

## STATE OF TENNESSEE v. ROGER VINES

**Direct Appeal from the Circuit Court for Wayne County**
**No. 14852    Stella Hargrove, Judge**

---

**No. M2011-01094-CCA-R3-CD - Filed June 27, 2012**

---

The defendant, Roger Vines, was convicted by a Wayne County jury for one count of selling .5 grams or more of methamphetamine, a Class B felony, and sentenced to a term of ten year's incarceration. On appeal, the defendant contends that: (1) the evidence is insufficient to support the conviction; (2) the ten-year sentence is excessive; and (3) the court erred in denying probation. Following review of the record, we find no error and affirm the judgment of conviction and resulting sentence as imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

William M. Harris, Lawrenceburg, Tennessee (on appeal), and W. Andrew Yarbrough, Waynesboro, Tennessee (at trial), for the appellant, Roger Vines.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Joel Douglas Dicus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The defendant's conviction arose from his act of selling methamphetamine to a confidential informant in a transaction which was monitored by law enforcement. In late 2009, Jason Bunch contacted the Wayne County Sheriff's Department and offered his assistance, and, after speaking with him, the officers agreed to use him as an informant. He agreed to act as an informant and to purchase drugs from various individuals.

On December 22, 2009, Mr. Bunch, in a non-monitored call, contacted the defendant and asked him about purchasing some methamphetamine. The defendant informed Mr. Bunch that he could supply him with an "eight-ball" for $300. Mr. Bunch asked the defendant if he could deliver the drugs to his area, and the defendant agreed that he would do so for an additional $100. The two then agreed to meet for the exchange at the Department of Human Services building.

After making this call, Mr. Bunch called his law enforcement contacts and met with Sheriff Rick Wilson and Chief Deputy Gerald Baer at the Catholic Church, located next to the Department of Human Services. Mr. Bunch was searched upon his arrival for any sort of contraband. Thereafter, he was provided with $400 of cash which officers had recorded the serial numbers from and was outfitted with a recording device in a hidden pocket of a jacket. During this process, Mr. Bunch again called the defendant to check his arrival time and then began walking to the Department of Human Services. The two officers remained in the car at the church, which was separated from the Department of Human Services by a wooded area. While not the view was not perfectly clear, the officers were able to see Mr. Bunch get into an older model white car, as well as hear the discussion through the recording device.

Mr. Bunch approached the defendant's car in the parking lot and got into the passenger seat. Initially, the defendant was not able to locate the drugs and was asked by Mr. Bunch, "You haven't lost it, have you?" The defendant eventually located the methamphetamine in his pocket and gave it to Mr. Bunch, who then gave the defendant the $400 in marked/recorded cash. Afterwards, the defendant informed Mr. Bunch that he also had some Xanax for sale, but Mr. Bunch informed him that he did not have any more money. At this point, the defendant indicated that he wanted to find a place to use the drugs and asked Mr. Bunch if the Department of Human Services was a "hot spot," meaning was it a suitable place to smoke the drugs. Mr. Bunch, not wanting to actually ingest the drugs he had purchased, informed the defendant that there were too many people there for it to be safe. After asking the defendant if the drugs did in fact weigh out as an "eight ball" and receiving an affirmative reply, Mr. Bunch exited the vehicle and went into the Department of Human Services to the restroom. The defendant then left in his vehicle.

After waiting in the restroom for a few moments, Mr. Bunch exited and began looking for the officers who were supposed to be waiting for him. However, he could not locate the officers and became nervous, which can be heard on the audio tape. Mr. Bunch later learned that the officers, aware that the defendant was leaving the parking lot, had followed him in order to get the license plate number of the car, which had not been visible from the position in the church lot, as it was approximately sixty yards away and the view was obstructed by trees. Although the officers lost sight of the older model white car for approximately thirty

seconds, they quickly spotted it and approached the vehicle, getting the license plate number on video. That plate number was registered to the defendant. The officers did not determine who was driving the car. Nor did they attempt to stop the driver because to do so would jeopardize later transactions with their confidential informant. Approximately six minutes after leaving, the officers returned to the Department of Human Services and met with Mr. Bunch, who gave them what was later determined to be approximately .7 grams of methamphetamine. Mr. Bunch was again searched for contraband, and nothing was discovered.

Based upon these actions, the defendant was indicted by a Wayne County grand jury for one count of selling .5 grams or more of methamphetamine. After a jury trial, he was convicted as charged. At the subsequent sentencing hearing, the State introduced the testimony of Amber Poole, a probation officer, who had prepared the pre-sentence report. According to Ms. Poole, during her interview with the defendant he informed her that "I feel like two years probation is an appropriate sentence for me. I feel like I need to go to drug rehab." The defendant acknowledged a prior felony conviction for passing counterfeit money, and Ms. Poole also discovered a 1998 conviction for driving under the influence. The defendant also told Ms. Poole that he had used cocaine and methamphetamine daily as long as he was able to obtain it. He also acknowledged that he had been unemployed since January of 2009, after having worked at the same place since 1995.

The State also called Sheriff Wilson, who stated that, during his tenure as sheriff, the usage of methamphetamine had increased. He testified that a new method of producing the drug had led to an even greater increase. He indicated that he believed it to be the single most dangerous drug in the county and that his department had made a concerted effort to stop the dealers. Sheriff Wilson noted that users who took methamphetamine often became violent. He also testified that usage of the drug led to an increase in other crimes, specifically theft and shoplifting. Sheriff Wilson further testified that the general public in Wayne County felt like the punishment for selling or producing methamphetamine was "just a slap on the wrist." He finished by noting that he believed there was a definite need for deterrence and that the defendant's sentence could in fact act as a deterrent to other dealers.

After hearing all the evidence presented, the trial court sentenced the defendant to ten years in the Department of Correction. A timely motion for new trial was filed with the court and, after consideration, it was denied by the trial court. The defendant thereafter filed a timely notice of appeal.

**Analysis**

On appeal, the defendant has challenged both the sufficiency of the convicting

evidence and his ten-year sentence of incarceration. With regard to the sentence, the defendant contends that the sentence is excessive in length and that the court erred in denying probation.

## I. Sufficiency of the Evidence

First, the defendant contends that the evidence supporting his drug conviction is insufficient. When an accused challenges the sufficiency of the convicting evidence, the standard of review is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *State v. Franklin*, 308 S.W.3d 799, 825 (Tenn. 2010); *see also* Tenn. R. App. P. 13(e). "[T]he State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000); *see also State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). Questions involving the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and an appellate court does not reweigh or re-evaluate the evidence. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in favor of the State. *Id*. "Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

As noted, the defendant was convicted of selling .5 grams or more of methamphetamine. Our statutes provide that it is an offense to knowingly sell a controlled substance. T.C.A. § 39-17-417(a)(3) (2010). The Code further notes that it is a Class B felony to sell .5 grams or more of methamphetamine. *Id*. at (c)(1).

In support of his sufficiency argument, the defendant relies upon four points, which he asserts undermine the validity of the conviction: (1) that the State failed to introduce cell phone records to substantiate that the calls from Mr. Bunch were to the defendant's cell phone; (2) that the defendant was not visible on the videotape and law enforcement officers could not conclusively identify him as the individual in the car; (3) that there was no reference made on the recording to an actual transaction taking place, *i.e.* here's the drugs I'm selling you for $300; and (4) that none of the marked/recorded money was found in the

defendant's possession. While we agree that each of the facts relied upon by the defendant are true, we cannot conclude that this leads to a reversal of the conviction. None of points argued by the defendant are necessary to support this conviction in light of the other evidence presented.

Viewed in the light most favorable to the State, the evidence is sufficient to support the conviction for sale of .5 grams or more of methamphetamine. Mr. Bunch testified that he called the defendant and set up a meeting to purchase drugs, that the defendant arrived at the pre-arranged spot, and that the defendant sold him methamphetamine. Based upon the verdict rendered, the jury chose to accredit Mr. Bunch's testimony, a finding which we will not reweigh or reevaluate on appeal. *See Evans*, 108 S.W.3d at 236. Moreover, Mr. Bunch recited the number which he stated he called to reach the defendant, and that number was the same one supplied by the defendant himself during the booking process as his cell phone number.

Additionally, officers were present during the transaction, having previously searched Mr. Bunch for contraband, and the audio recording, although not specifically mentioning a "sale," is consistent with Mr. Bunch's testimony. That the officers were not able to obtain an actual visual identification of the defendant in the car is not necessary to the case. Mr. Bunch provided that positive identification. Moreover, the two officers immediately followed the car leaving the scene of the transaction and determined that it was registered to the defendant. When officers returned to the scene, Mr. Bunch was in possession of more than .5 grams of methamphetamine but no money. Based upon this evidence, it is clear that the defendant has failed to establish that insufficient evidence was presented; rather, it is clear that "*any* reasonable trier of rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

## II. Sentencing

Next, the defendant contends that the trial court erred in imposing a ten-year sentence because it is not the least severe measure necessary to protect the public from the defendant's future criminal conduct and bears no relationship to the defendant's potential for rehabilitation. Further, he contends that the court erred in denying his request for an alternative sentence, specifically probation.

The burden of demonstrating that a sentence is erroneous is placed upon the appealing party. *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). This court's review of a trial court's sentence is *de novo* with a presumption that the trial court's determinations are correct. *Id*. This presumption "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and

circumstances.'" *Id*. at 344-45 (*quoting State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails" and "'our review is simply *de novo*.'" *Id*. at 345 (*quoting State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004)).

### a. Length of Sentence

Pursuant to the 2005 amendments, our Sentencing Act has abandoned the statutory minimum sentence and renders enhancement and mitigating factors advisory only. T.C.A. §§ 40-35-114, -210(c). Thus, the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "'consistent with the purposes and principles of the Sentencing Act.'" *Carter*, 254 S.W.3d. at 343 (*quoting* T.C.A. § 40-35-210(d)). Following the 2005 amendment to our Sentencing Act, the trial court is required to consider, but not be bound by, certain advisory guidelines to arrive at an appropriate sentence, which is then subject to appellate review. T.C.A. § 40-35-210(c). In sentencing a defendant, the trial court is required to consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in [sections] 40-35-113 and 40-35-114;

6) Any statistical information provided by the Administrative Office of the Courts as to the sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b).

A sentence is proper if the record reflects that the trial court considered those enhancement and mitigating factors it deemed applicable, and the trial court, in determining the specific sentence, considered the nature and characteristics of the crime and the character

and background of the defendant, and imposed a sentence which is not consistent with the principles and purposes of sentencing. T.C.A. § 40-35-210(b), (d). The trial court's weighing of the various mitigating and enhancement factors has been left to the trial court's sound discretion. *Carter*, 254 S.W.3d at 345. "Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened." *Id*. If the trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors. Therefore, appellate courts are left with a very narrow set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence. *Id*. at 345-46.

As noted, the defendant was convicted as a Range I offender of a Class B felony. Therefore, his applicable sentencing range was eight to twelve years. *See* T.C.A. §§ 39-14-105(5); 39-14-118(b); 39-14-118(c)(1); 40-35-112(a)(2). The trial court sentenced the defendant to ten years' incarceration at 30%, which falls within the applicable sentencing range. In reaching this determination, the trial court relied upon the presence of a single enhancement factor, that being prior criminal history and behavior. *See* T.C.A. § 40-35-114(1). The court based application of this factor on the defendant's prior convictions for DUI and felony counterfeiting, as well as his admitted criminal conduct related to his ingestion of illegal drugs. The court found no applicable mitigating factors.

On appeal, the defendant asserts that the trial court erred by failing to apply his argued mitigating factor that his criminal conduct neither caused nor threatened serious bodily injury. *See* T.C.A. § 40-35-113(1). The record indicates that the trial court did consider the defendant's argument at the hearing with regard to this factor but found that it was not appropriate. The defendant contends that the record is devoid of any evidence that establishes that the sale of methamphetamine to Mr. Bunch either caused or threatened serious bodily injury. He also argues that because he only had one prior felony conviction, which was over thirty years old, the court should have given minimum weight to the enhancement factor and "sentenced the [defendant], not at the middle of the range, but rather more appropriately with the minimum sentencing of said range." We conclude that both assertions are misplaced.

While it is true that in this specific case that there was no threat of serious bodily injury resulting from the sale, that is true only because the sale was made to a confidential informant who had no intention of using the substance. However, the defendant was not aware of that. Evidence was presented at the hearing by Sheriff Wilson to the myriad of possible dangers caused by methamphetamine, to the individual user, the public, and the

environment. We see no error in the trial court's refusal to apply this factor in sentencing the defendant.

The defendant's argument regarding the enhancement factor is essentially that the trial court abused its discretion in the weight given to the factor. However, as noted, weighing of the various mitigating and enhancement factors has been left to the trial court's sound discretion. *See Carter*, 254 S.W.3d at 345. While the defendant is correct that his only felony conviction on record was over thirty years old, his argument ignores the other criminal conduct relied upon by the trial court in determining the weight to give the enhancement factor for prior criminal convictions or behavior. The defendant also had convictions for DUI and failing to carry a driver's license. Moreover, during the interview with the defendant for the purpose of preparing the pre-sentence report, he made statements admitting criminal behavior, *i.e.* the use of drugs, for an extensive time span. This information can also be considered in application of this factor. The defendant admitted that he began using alcohol at the age of nine or ten, drinking two to three times a week until the age of forty-five. He also acknowledged that he had committed crimes while drunk. The defendant acknowledged that he had began using cocaine at the age of thirty-five, had continued to do so for ten years, and had "used as much as [he] could get." He related that he began using methamphetamine at the age of forty-five, using it daily "as long as [he] could get it." Based upon this information, we cannot conclude that the defendant put forth any argument which would establish that the trial court abused its discretion in setting the length of the sentence. The defendant is entitled to no relief.

## b. Alternative Sentencing

Next, the defendant contends that the trial court erred in denying him an alternative sentence, specifically "either full or partial probation." Pursuant to the 2005 sentencing amendment, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347. Instead, our statute now reads that a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony "should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. at 343 (citing T.C.A. § 40-35-102(6)). Evidence to the contrary may be established by showing that: (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct; (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses; or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. *Ashby*, 823 S.W.2d at 169 (citing T.C.A. § 40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. T.C.A. § 40-35-210(b)(5);

*State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); *Boston*, 938 S.W.2d at 438.

In this case, while the defendant remains eligible for probation because his sentence was ten years or less and the offense for which he was convicted is not specifically excluded by statute, he does not fall within the parameters of the statute in question, because he was convicted of a Class B felony. Regardless, the defendant has failed to establish his "suitability for full probation." *See State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); T.C.A. § 40-35-303(b). A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 201 Tenn. 156, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other ground by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000)). Additional factors which should be considered are: (1) the nature and characteristics of the crime; (2) the defendant's potential for rehabilitation; (3) whether the sentence would unduly depreciate the seriousness of the offense; and (4) whether an alternative sentence would provide an effective deterrent. *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995).

The defendant argues that he "clearly proved" his suitability for probation, asserting that he showed gainful employment through January 2009, had a good relationship with family, and was financially responsible for himself. He also relies upon his sparse criminal history and that there was no showing of any prior probation violations. However, the trial court concluded that the defendant had failed to carry his burden, and we find no error in that determination. As pointed out by the trial court, while the defendant's history of criminal convictions was not great, his criminal behavior was. That the defendant was not caught and punished for that behavior in no way lessens the weight which the trial court could afford it in its determination, as it was behavior admitted by the defendant. Moreover, the defendant's argument ignores the fact that the trial court found that probation would depreciate the seriousness of the offense and that confinement was necessary to provide an effective deterrent, both of which are valid considerations. In fact, the court noted that, in its opinion, deterrence alone would justify the denial of probation.

The court is correct that deterrence alone can provide a valid basis for denial of probation, but only when the evidence "would enable a reasonable person to conclude that (1) deterrence is needed in the community, jurisdiction, or state; and (2) the defendant's incarceration may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *See Hooper*, 29 S.W.3d at 13. Here the State called Sheriff Wilson, who testified that methamphetamine was an increasing problem in his jurisdiction. Sheriff

Wilson noted that he found methamphetamine to be the most dangerous drug in his jurisdiction and that it led to an increase in other crimes as well amongst its users. He specifically noted that the belief among the people of Wayne County was that the punishment for methamphetamine related offenses was "just a slap on the wrist" and that if a substantial sentence was given and published in the local paper, it would serve as a deterrent for other individuals.

The defendant has again failed to carry his burden. On the record before us, we can reach no conclusion other than that the trial court did not err in denying the defendant a probationary sentence.

## CONCLUSION

Based upon the foregoing, the judgment of conviction and sentence are affirmed

_____
JOHN EVERETT WILLIAMS, JUDGE